IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:14CV165-RLV

| | |
|---|---|
| MARVIN L. BOYER, SR.; SANDRA T. BOYER; BENNY R. ELLEDGE; JOANNA L. ELLEDGE; NORMA J. HELLARD; BRENDA W. JOLLY; WANDA A. MARTIN; LARRY D. MATHENY, as Executor of the Estate of CLOYCE E. MATHENY, deceased; EDWARD L. MCLELLAND, JR., Individually and as Executor of the Estate of MARSHA E. MCLELLAND, deceased; JAMIE D. MORRISON, as Administrator of the Estate of BARBARA E. MORRISON, deceased; LISA SMITH CASH, as Executor of the Estate of BRENDA H. SMITH, deceased; THOMAS L. SMITH; DORIS P. SWAIM; STEVEN C. SWAIM; and BEVERLY M. WRIGHT, individually and as Executor of the Estate of JOHN W. WRIGHT, deceased, Plaintiffs, v. HANKOOK TIRE CO., LTD.; HANKOOK TIRE AMERICA CORPORATION; and JOHN B. OSWALT, JR., as Administrator of the Estate of RANDOLPH L. MORRISON, deceased, Defendants. | Memorandum and Order |

**THIS MATTER** comes before the Court upon Plaintiffs' Motion for Remand, filed November 10, 2014. (Docs. 16, 17, 20). Defendants oppose Plaintiffs' motion. (Doc. 19). This matter is fully briefed and ripe for disposition by the Court.

## I. Nature of Case

On October 2, 2013, Plaintiffs and Plaintiffs' decedents ("Plaintiffs"), a senior adult group from Front Street Baptist Church ("Front Street Baptist") in Statesville, North Carolina, were traveling home from Gatlinburg, Tennessee, towards Statesville, on I-40 East in a 1997 Metrotrans Europa transit passenger bus owned by Front Street Baptist ("church bus"). (Doc. 1 / Exh. A – Compl. ¶ 1). The church group was returning from a Jubilee in Gatlinburg, Tennessee, a national worship event for senior adult church groups. Id. During the return trip, at approximately 2:00 p.m., the church bus experienced difficulty with the left front tire, resulting in a tragic multi-vehicle accident. Id., ¶ 30. According to Plaintiffs, the front left tire of the church bus sustained a "sudden, catastrophic, and complete tread / belt separation." Id., ¶ 1. The tire was a Hankook AH12 Radial 255/70R22.5 that bore DOT No. 5M54NEH1508 (the "subject tire"). Id., ¶ 29. After the tire failed, the bus veered left across the median of I-40 and proceeded through a steel cable barrier into oncoming westbound traffic. Id., ¶ 1. The church bus collided with a Chevrolet Tahoe and a tractor-trailer. Id. Eight people were killed and fourteen seriously injured. Id.

On September 3, 2014, Plaintiffs commenced litigation in the North Carolina General Court of Justice, Superior Court of Iredell County. (State Court Civil No: 14CVS01873). Plaintiffs brought suit against Defendants Hankook Tire Company, Ltd. ("Hankook Ltd."), Hankook Tire America Corp. ("Hankook America") (collectively, "Hankook"), and Defendant John B. Ostwalt, Jr. ("Ostwalt"), as Administrator of the Estate of Randolph L. Morrison, deceased ("R. Morrison Estate"). (Compl.).

Defendant Hankook Ltd., the parent entity of Hankook America, is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of

2

business in Seoul, Republic of Korea. (Compl., ¶¶ 18, 63; Doc. 2, ¶ 2; Doc. 3 / Hankook Ltd. Answer, ¶ 4). Hankook America is a corporation organized and existing under the laws of the State of New Jersey. (Compl., ¶ 20; Hankook America Answer, ¶ 7). Hankook Ltd. is engaged in the design and manufacture of tires. (Doc. 3 / Hankook America Answer, ¶ 19).

In the Complaint, Plaintiffs claim Hankook was negligent in both its design and in manufacturing the Hankook AH12 Radial 255/70R22.5.[1] (Compl. ¶¶ 50, 51, 56−68). Plaintiffs also claim that Hankook failed to warn of known defects and unreasonably dangerous conditions in the subject tire. (Compl. ¶¶ 52−53, 59, 69−73). Plaintiffs seek actual and punitive damages from Hankook. (Compl., ¶¶ 74−82, Prayer for Relief, ¶ 5).

In addition to the Hankook Defendants, Plaintiffs bring their action against the R. Morrison Estate, a nondiverse North Carolina defendant.[2] The late Randolph L. Morrison ("Mr. Morrison") was driving the church bus at the time of the fatal accident. (Compl. ¶ 1). Mr. Morrison, a diesel mechanic by trade, was delegated one of two drivers of the church bus and voluntarily "maintained and drove the church bus as his service" to Front Street Baptist. (Compl. ¶ 1; Crossclaim, ¶ 1). Plaintiffs' Complaint asserts negligence by Mr. Morrison as a *potential* concurrent cause of the crash.[3] (Compl. ¶¶ 83−88). Specifically, Plaintiffs allege that, "[t]o the extent Randy Morrison is found to have acted negligently in operating the church bus or in maintaining the church bus in a safe condition, his actions in conjunction with the acts and

---

[1] The subject tire was manufactured at Hankook's Geumsan Plant in the Republic of Korea during the fifteenth week of 2008. (Compl., ¶¶ 1, 50). Front Street Baptist purchased the subject tire new on or about September 8, 2008. Id., ¶ 29.

[2] It is undisputed that the R. Morrison Estate is a nondiverse defendant of legal residence in North Carolina and that, on its face, Plaintiffs' inclusion of the R. Morrison Estate precludes removal. *See* 28 U.S.C. § 1446(b)(2) (prohibiting removal "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought").

[3] The estate of Mr. Morrison's deceased wife is a named plaintiff: Plaintiff Jamie D. Morrison, as Administrator of the Estate of Barbara E. Morrison, deceased.

omissions of the [Hankook] Defendants proximately caused Plaintiffs' and the decedents' injuries and deaths." (Compl., ¶ 87). Plaintiffs allege that Hankook and the R. Morrison Estate are jointly and severally liable. (Id., ¶ 88).

On October 10, 2014, the Hankook Defendants filed a Notice of Removal asserting fraudulent joinder. (Doc. 1). The Hankook Defendants argue, as a matter of law, that the Court can glean from the pleadings that Plaintiffs named the R. Morrison Estate as a party solely to defeat diversity jurisdiction − that Plaintiffs do not in reality intend to seek a joint judgment against the R. Morrison Estate and Hankook.

On November 3, 2014, Ostwalt, as Administrator and on behalf of the R. Morrison Estate, filed an Answer to the Complaint. (Doc. 12). Ostwalt denies that Mr. Morrison was negligent in any way and asserts numerous defenses to the Complaint, including the affirmative defenses of Sudden Emergency and Unavoidable Accident. (R. Morrison Estate Answer, Fifth Defense, 19). Alternatively, Ostwalt claims that any negligent acts of Mr. Morrison were "passive and secondary in nature" and therefore insulated by other "superseding, intervening and primary or active negligent acts of others." (R. Morrison Estate Answer, Sixth Defense, 19). Ostwalt did not join in removal and asserts that this federal court lacks subject matter jurisdiction. (R. Morrison Estate Answer, Seventh Defense, 20).

On November 10, 2014, Plaintiffs filed the instant Motion for Remand. (Doc. 16). Plaintiffs deny that the decision to name the R. Morrison Estate as a Defendant is an effort to defeat diversity jurisdiction and contend that they sought to sue all potentially responsible parties so that the jury could have all of the evidence before it in determining liability. Plaintiffs contend that the negligence claim against the R. Morrison Estate is an alternative theory of

liability and permitted under North Carolina law. [4]

On November 17, 2014, Hankook America filed an Answer to the Verified Complaint asserting thirty three (33) defenses.[5] (Doc. 3). Notably, Hankook America's defenses contemplate negligence by other parties and / or non-parties, failure to maintain the subject tire in a safe condition, failure to exercise reasonable care, driver error, intervening and superseding causes, and proportional and comparative negligence as possible bases for reducing any damages award against Hankook. Id.

On November 25, 2014, Hankook America filed a Memorandum in Opposition to

---

[4] As a procedural matter, North Carolina law allows plaintiffs to plead alternative theories of liability as well as joint liability. *See* N.C. GEN. STAT. § 1A-1, Rule 8(a)(2) ("Relief in the alternative or of several different types may be demanded.")

[5] In its Answer, Hankook America asserts the following defenses: failure to state a claim (First), venue and jurisdiction are or may be inconvenient or improper (Second), failure to join an indispensable party (Third), no breach of duty owed to Plaintiffs (Fourth), that if deemed negligent, recovery should be reduced proportionally in accordance with the negligence of Plaintiffs and any other negligent party or non-party (Fifth), all statutory and other limitations on damages (Sixth), that damages and injuries were caused in full or in part by the misuse, improper use, improper maintenance, improper repair, abnormal use, misapplication, abuse, alteration, modification, or other failure to maintain the vehicle or the tire in a safe condition and the failure to exercise reasonable care (Seventh), reserves the right to assert negligence by other persons or companies (Eighth), improper use or use inconsistent with warnings or instructions (Ninth), that the tire was not in substantially the same condition as when it was manufactured (Tenth), assumption of risk (Eleventh), failure to mitigate damages (Twelfth), the doctrine of comparative fault (Thirteenth), that Defendant was unaware of any danger related to its product and that the discovery of such danger was beyond the state of the art at the time of sale (Fourteenth), subject matter is preempted by the National Traffic and Motor Vehicle Safety Act (Fifteenth), the doctrine of primary jurisdiction (Sixteenth), the right to supplement its Answer after discovery (Seventeenth), statute of limitations and statutes of repose (Eighteenth), set-off (Nineteenth), multi-faceted challenge to claim for punitive damages including that a non-bifurcated trial would violate Defendant's due process rights and failure to plead punitive damages with particularity (Twentieth), fraudulent joinder of the Morrison Estate (Twenty-First), if tire was defective or in dangerous condition, Plaintiffs knew of defect and dangerous condition and unreasonably and voluntarily exposed themselves to danger (Twenty-Second), tire was not defective or unreasonably dangerous at the time it left Defendant's control (Twenty-Third), intervening / insulating negligence (Twenty-Fourth), the sole negligence of third parties (Twenty-Fifth), and that any recovery should be decreased for failure to wear seatbelt (Twenty-Sixth). (Hankook America Answer, 15−22). Hankook America also invoked provisions of the Tennessee Products Liability Acts of 1978, TENN. CODE ANN. § 29-28-101 *et seq*. (Twenty-Seventh, Twenty-Ninth thru Thirty-Second), and the Tennessee Consumer Protection Act of 1977, TENN. CODE ANN. § 47-18-101 *et seq*. (Twenty-Eighth, Thirty-Third). (Id., 22−23).

Plaintiffs' Motion for Remand. (Doc. 19). Hankook Ltd. joined in opposition. (Doc. 19, 2 n. 1).

The same day, Hankook Ltd. filed a Notice of Consent to Removal expressly reserving all defenses including those found within Rule 12(b).[6] (Doc. 18).

On December 5, 2014, Hankook Ltd. filed an Answer asserting the same defenses as those raised in the Hankook America Answer. (Doc. 20).

On December 19, 2014, a Crossclaim was filed by Ostwalt on behalf of the R. Morrison Estate against the Hankook Defendants pursuant to Rule 13(g) of both the Federal Rules of Civil Procedure and North Carolina Rules of Civil Procedure. (Doc. 24). Ostwalt alleges that Hankook was negligent and breached its duty to Mr. Morrison to exercise reasonable care to "design, test, manufacture, inspect, and distribute" its Hankook AH12 Radial 255/7OR22.5 tire bearing DOT No. 5M54NEH1508. (Crossclaim, Count One, ¶¶ 1−10). Ostwalt further alleges that Hankook failed to warn Mr. Morrison about "known defects and unreasonably dangerous conditions in the subject tire." (Crossclaim, Count Two, ¶¶ 1−14). Ostwalt seeks to recover actual and punitive damages against the Hankook Defendants. (Crossclaim, Count Three, ¶¶ 1−21).

Defendants answered the Crossclaim on January 7, 2015 with <u>thirty one</u> defenses. (Docs. 26, 27). Defendants' Answers are virtually identical to their respective Answers to Plaintiffs' Verified Complaint. <u>With respect to the Morrison Estate specifically</u>, Defendants assert that

---

[6] In actions with multiple defendants, 28 U.S.C. §§ 1441 and 1446 require that <u>all</u> defendants join in or consent to the notice of removal. *See McKinney v. Bd. of Trustees of Mayland Community College*, 955 F.2d 924, 925 (4th Cir. 1992). Hankook Ltd. was served November 18, 2014 consistent with the Hague Convention. The Notice of Consent to Removal filed by Hankook Ltd., is timely since consent was provided within thirty days of service. *See Barbour v. Int'l Union*, 640 F.3d 599, 607-11 (4th Cir. 2011) (affirming the "*McKinney* intermediate rule," which requires a notice of removal to be filed within the first-served defendant's 30-day window, but gives later-served defendants 30 days from the date they were served to join the notice of removal). The fact that Ostwalt did not consent to removal is immaterial in light of Defendants' argument that the R. Morrison Estate is fraudulently joined. (Doc. 19, 17).

Hankook owed no duty of care to Mr. Morrison and did not breach any duty (Fifth), that the alleged damages "may have been a direct and proximate result of [Mr.] Morrison's own negligence, recklessness or gross negligence" such that the Crossclaim is barred by the doctrine of comparative negligence (Sixth), that the damages and injuries complained of "may have been caused in full or in part by the misuse, improper use, improper maintenance, improper repair, abnormal use, misapplication, abuse, alteration, modification, or other failure to maintain the vehicle or the tire, or each of them in a safe condition and the failure to exercise reasonable care under the circumstances in the use or maintenance of the vehicle or the tire, or each of them, by Morrison or non-parties" (Eighth), improper use or use inconsistent with warnings and instructions (Tenth), Mr. Morrison's damages were caused in whole or in part by his failure to exercise reasonable care and diligence to mitigate damages (Thirteenth), that the "intervening / insulating negligence" of other parties proximately caused the accident (Twenty-First), and that Mr. Morrison's failure to wear a safety belt was the sole proximate cause of, or at least exacerbated, his injuries (Twenty-Second). (Hankook Defendants' Answers to Crossclaim, 6−14).

The question presented by Plaintiffs' Motion for Remand is whether, despite the absence of complete diversity on the face of the Complaint, 28 U.S.C. § 1332(a), subject matter jurisdiction may be found to exist in this federal court under the doctrine of fraudulent joinder.

## II. Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Given this principle, courts must strictly construe removal jurisdiction and resolve all doubts in favor of remand. *See Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 297

(4th Cir. 2008); *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994). Remand is proper if the complaint "fails to allege facts upon which subject matter jurisdiction can be based," or "if the jurisdictional allegations in the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291−93 (1938); *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981) ("[T]he propriety of removal depends on "the facts asserted by the plaintiff as the basis for the liability of the resident defendant.")

"A civil case commenced in state court may, as a general matter, be removed by the defendant to federal district court, if the case could have been brought there originally." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005) (citing 28 U.S.C. § 1441). A U. S. District Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between — (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States." 28 U.S.C. § 1332. This section requires complete diversity between all parties. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Moreover, in cases in which the district court's jurisdiction is based on diversity of citizenship, the privilege of removal is further limited in that a federal court may exercise jurisdiction only if no defendant is a citizen of the state where the action has been initiated. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68–69 (1996).

## III.   Discussion

### A. Fraudulent Joinder As An Exception To Complete Diversity

Despite the absence of complete diversity, the doctrine of fraudulent joinder permits removal of an action from state court to federal court by allowing a district court "to disregard the citizenship of [a] nondiverse defendant[] and assume jurisdiction."[7] *See Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1004, n. 2 (4th Cir. 2014) (en banc) (internal citation omitted); *Mayes v. Rapoport*, 198 F.3d 457, 261 (4th Cir. 1999). In essence, the doctrine provides that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having **no real connection** with the controversy. . . ." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97−98 (1921) (emphasis added) (internal citations omitted). "If in such a case a resident defendant is joined, the joinder, although fair upon its face, may be shown by a petition for removal to be only ***a sham or fraudulent device*** to prevent a removal . . . ." *Wilson*, 257 U.S. at 98 (emphasis added). Within the Fourth Circuit,

> "[T]o establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either:
> [A] [T]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or
> [B] [T]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts."

*Barlow*, 772 F.3d at 1004, n. 2; *see also Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (citing *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir.1993)). Defendants must show that Plaintiffs "cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff[s'] favor." *Mayes*, 198 F.3d at 464

---

[7] The "fraudulent joinder" term is misleading in that the judicially created doctrine does not actually require a showing of fraud. *See Mayes v. Rapoport*, 198 F.3d 457, 261 n. 8 (4th Cir. 1999) (internal citation omitted). Similarly, the doctrine does not require joinder and is "potentially applicable to each defendant named by the plaintiff either in the original complaint or anytime prior to removal." *Id.*

and 465 (citing *Marshall*, 6 F.3d at 232−33). The Defendants' burden is heavy as the fraudulent joinder test has been described as *more favorable* to the Plaintiff than the Rule 12(b)(6) motion to dismiss standard. *See Mayes*, 198 F.3d at 464 (quoting *Hartley*, 187 F.3d at 424) (emphasis added).

In addition, when examining the viability of a claim, the court is "not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *AIDS Counseling & Testing Ctrs. v. Group W Tel., Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990); *see generally, Richmond, Fredricksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768−69 (4th Cir. 1991) (scope of court's jurisdictional inquiry). In disputes over whether removal was proper, however, the Fourth Circuit has cautioned that "a jurisdictional inquiry is not the appropriate stage of litigation to resolve . . . various uncertain questions of law and fact . . . [C]ourts should minimize threshold litigation over jurisdiction." *Hartley*, 187 F. 3d at 426. Put another way,

> Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper. To permit extensive litigation on the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.

*Hartley*, 187 F. 3d at 426 ("The district court erred by delving too far into the merits in deciding a jurisdictional question.").

1. **Defendants Do Not Allege "Outright Fraud" Or Falsity In Plaintiffs' Pleading Of Jurisdictional Facts**

Hankook does not allege "outright fraud" by Plaintiffs. Likewise, Hankook does not contend that the jurisdictional facts alleged are untrue. In fact, there is no disagreement about the citizenship of the R.Morrison Estate. Mr. Morrison was a citizen of North Carolina. (Compl.,¶

22). The legal representative of Mr. Morrison's Estate, Mr. Ostwalt, is, by statute, deemed a citizen of the same State as the decedent. *See* 28 U.S.C. § 1332(c)(2) ("the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent. . . ."). Unless the R. Morrison Estate is dismissed as a "sham" Defendant with "no real connection" to this controversy, complete diversity does not exist and remand is required.

### 2. Defendants Fail To Show "No Possibility" That Plaintiffs Could Establish A Cause of Action Against The R. Morrison Estate In State Court

Under Fourth Circuit precedent, if Hankook does not negate *all possibility* of Plaintiffs' recovery against the R. Morrison Estate, remand is appropriate. *See Hartley*, 187 F.3d at 425; *Walters v. Holiday Motor Corp.*, 2012 WL 5465012, * 1 (W.D.Va. May 21, 2012); *Geller*, 2011 WL 1239835, * 4. The critical inquiry is whether Defendants satisfy the heavy burden to show that Plaintiffs' negligence allegations against the R. Morrison Estate <u>do</u> <u>not</u> raise a "slight possibility of a right to relief" or a "glimmer of hope" that the claim could succeed. *Id*. at 426 (dicta); *Geller*, 2011 WL 1239835, * 4.

In determining whether Plaintiffs' negligence claim against the R. Morrison Estate is viable under state law, the Court looks to the common law in both North Carolina and Tennessee.[8] *See Geller v. Provident Life and Accident Ins. Co.*, 2011 WL 1239835, * 4

---

[8] With respect to choice of law, the record does not make clear whether the accident occurred on a section of I-40 found within the State of North Carolina or the State of Tennessee. Plaintiffs assert that North Carolina law applies, which suggests that the accident occurred in North Carolina. (Compl., ¶ 26). The North Carolina courts "consistently adhere[] to the *lex loci* rule in tort actions." *Boudreau v. Baughman*, 368 S.E.2d 849, 853−54 (N.C. 1988) (internal citations omitted). In other words, "matters affecting the substantial rights of the parties are determined by . . . the law of the situs of the claim . . . ." *Boudreau*, 368 S.E.2d at 854 (internal citation omitted). For actions sounding in tort, the state where the injury occurred is considered the situs of the claim." *Id*. On the other hand, Hankook's memorandum of law in opposition to remand asserts that the accident occurred in Tennessee, (Doc. 19, 4), and certain of the Hankook defenses cite Tennessee law. Contemporaneous news accounts of the crash of the church bus, however, uniformly identify its location as having occurred in Jefferson County, Tennessee. *See e.g.*, http://myfox8.com/2013/10/02/nc-church-bus-involved-in-crash-in-tenn-multiple-fatalities-reported, October 2, 2013; http://www.wbtv.com/story/23592786/at-least-six-dead-in-fatal-bus-crash-carrying-

(W.D.N.C. March 30, 2011) (citing *Bettius v. Sanderson*, *P.C. v. Nat'l Union fire Ins. Co. of Pittsburgh*, *Pa.*, 839 F.2d 1009, 1019 (4th Cir. 1988) ("When hearing a case pursuant to diversity jurisdiction, a federal court must determine issues of state law as it believes the highest court in the state would determine them.")); *see also Trustees of Hackberry Baptist Church v. Womack*, 2014 WL 5332714, * 4 (W.D.Va. October 20, 2014) (state pleading requirements control motions to remand).

Defendants argue that Plaintiffs clearly seek to avoid removal to federal court in that they "stop[] short of asserting any wrongdoing by the local defendant." (Doc. 19, 3). In an attempt to show that Plaintiffs' factual allegations are deficient, Hankook faults Plaintiffs for failing to allege within the Complaint that Mr. Morrison *breached* his duty of care − an essential element of any negligence action. (Doc. 19, 3) (citing Complaint, ¶¶ 84, 85). Under North Carolina law:

> In order to establish actionable negligence, plaintiff must show (1) that there has been a failure to exercise proper care in the performance of some legal duty which defendant owed to plaintiff under the circumstances in which they were placed; and (2) that such negligent breach of duty was a proximate cause of the injury.
>
> \*\*\*
>
> Proximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff[s'] injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed. Foreseeability is thus a requisite of proximate cause, which is, in turn, a requisite for actionable negligence.
>
> \*\*\*
>
> There may be more than one proximate cause of an injury. When two or more proximate causes join and concur in producing the result complained of, the author of each cause may be held for the injuries inflicted. The defendants are jointly and severally liable.

---

church-group-from-Statesville, October 2, 2013. The crash occasioned widespread media coverage, and there seems to be no doubt as to the state – Tennessee − in which it occurred.

*Hairston v. Alexander Tank and Equipment Co.*, 311 S.E.2d 559, 565 (N.C. 1984) (internal citations and quotation marks omitted). The elements of a common law negligence claim in Tennessee are not substantively different.[9]

In this case, Plaintiffs' Verified Complaint alleges that Mr. Morrison "owed a duty of care to operate the church bus in a safe and prudent manner" and also "undertook a duty to maintain the church bus in a safe condition on behalf of Front Street Baptist Church." (Compl., ¶¶ 84, 85). Plaintiffs then suggest the *possibility* that Mr. Morrison **failed to exercise ordinary care** in the operation and / or maintenance of the church bus.[10] (Compl., ¶ 87) ("To the extent Randy Morrison is found to have acted negligently . . . ."). Resolving all issues of fact and law in Plaintiffs' favor, *Mayes*, 198 F.3d at 464, the Court finds that the R. Morrison Estate is not fraudulently joined. Mr. Morrison spent his career working on large commercial vehicles and gratuitously assumed at least partial responsibility for the maintenance of the church bus. By all accounts, the subject tire was some five or six years old. That the driver of the church bus, who is also at least in part the individual tasked with maintenance of the bus, owed a duty of care to the passengers cannot be denied. Nonetheless, the underlying factual issues have yet to be fleshed out and the undersigned need not prescribe the legal framework under state law for

---

[9] Under Tennessee law, the elements of a cause of action for common-law negligence are: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008). Similarly, "[a]n injury that is the natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury which could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable and such an act is either the remote cause, or no cause whatever, of the injury." *Doe v. Linder Constr. Co., Inc.*, 845 S.W.2d 173, 181 (Tenn. 1992).

[10] Plaintiffs request leave to amend the Verified Complaint in the event the Court has concern about the sufficiency of the factual allegations against the R. Morrison Estate. (Doc. 21). Applying Fourth Circuit precedent, and in light of the Court's analysis, amendment of the pleadings is not before this federal district court as the legal question presented is purely jurisdictional.

13

analyzing concurrent causes, insulating negligence, or the other defenses and counterclaims asserted by the parties. In short, the Hankook Defendants seem to misconstrue the legal standard. The undersigned is not tasked with testing the sufficiency of Plaintiffs' Verified Complaint. *See Hartley*, 187 F.3d at 426. Likewise, whether Plaintiffs are ultimately successful against Hankook, the R. Morrison Estate, or both, is not the question. *Id*. As such, the Complaint's omission of the term "breach" is not determinative of the fraudulent joinder issue. *Hartley*, 187 F.3d at 424−26; *see also Walters v. Holiday Motor Corp.*, 2012 WL 5465012, * 1 (W.D.Va. May 21, 2012) (question of whether a cause of action exists against a non-diverse party is a state law issue to be decided by a state court).

As further evidence that the R. Morrison Estate is fraudulently joined, Hankook points to the relationship between the parties, namely, Mr. Morrison's prior connection to Plaintiffs. Defendants rely on *Smalls v. Great American Lines, Inc.*, in which the District of South Carolina denied plaintiff's motion to remand and retained federal jurisdiction on fraudulent joinder grounds. 2011 WL 3490007 (D.S.C. August 9, 2011). *Smalls* is easily distinguishable from the instant facts. In *Smalls*, plaintiff, an independent contractor working with nondiverse defendant, Joe Smalls Boyz, LLC ("JSB"), sustained injuries as heavy equipment was loaded onto a wooden trailer by a crane. *Id*., * 2. Plaintiff brought suit in state court alleging negligence and gross negligence against the entity that provided the trailer to JSB for the job, the company that the crane operator worked for, JSB, and multiple unidentifiable parties. *Id*. Defendants removed the case to federal court alleging fraudulent joinder of JSB, a limited liability company owned by plaintiff's wife, Tiffany Smalls. *Id*. The removing defendants persuasively argued that Plaintiff had no intention of seeking a joint judgment against the nondiverse entity owned by his wife and operating out of his own home; that Plaintiff would "have to establish his own negligence" and

14

threaten the family's livelihood (Plaintiff's household income) in order to obtain a joint judgment. *Id.*,* 3. Judge Norton explained that these facts tended to show that JSB was a "sham" defendant in that Plaintiff had "no real intention to get a joint judgment."[11] *Id.*,* 4 (quoting *AIDS Counseling*, 903 F.2d at 1003). As for the "no possibility" standard, the Court noted that there were no specific factual allegations in the complaint setting forth any theory of negligence or gross negligence against the nondiverse defendant, JSB. *Id.*,* 4. Instead, the complaint only asserted general allegations attributable to the entire group of defendants. *Id.*,* 1. Judge Norton found that, given the facts as alleged in the original complaint, Plaintiff was unable to establish a cause of action against JSB in state court. *Id.*,* 4 (seemingly applying the Rule 12(b)(6) standard for testing sufficiency of the allegations in the complaint). Plaintiff's motion to remand was denied. *Id.*, * 5.

Here, Defendants are not able to show that the R. Morrison Estate is a mere sham defendant. As discussed, *supra*, Plaintiffs' allegations concerning the R. Morrison Estate, which is represented by counsel in this lawsuit, are consistent with North Carolina law and contemplate joint and several liability.[12] The R. Morrison Estate is represented by legal counsel and has

---

[11] The *Smalls* facts raised lots of questions about the legitimacy of the action against JSB. Plaintiff submitted an affidavit claiming that he was "solely the driver of the company established and operated by Tiffany Smalls." *Id.*, * 2. Plaintiff represented to the court that he knew little about JSB or the relationship between him and his wife, the purported sole member of JSB. *Id.*,* 4. Plaintiff's wife was listed with the South Carolina Secretary of State as the registered agent for JSB. *Id.*, * 4. JSB's business address was Plaintiff's home address. *Id.*, ** 2, 4. In addition, JSB had not been served until a month prior to the motion hearing and had failed to respond, yet Plaintiff had not taken any steps towards securing default judgment against JSB. *Id.*,* 4.

[12] Plaintiffs proffer a copy of a Complaint brought by different counsel on behalf of the Trent Roberts Estate commencing a related lawsuit. (Doc. 21 / Exh. A – *Bobby Roberts, as Administrator of the Estate of Trent Roberts v. Hankook Tire Co., Ltd.; Hankook Tire America Corp.; General Motors LLC; and John B. Ostwalt, Jr., as Personal Representative of the Estate of Randolph L. Morrison*, No. 14-CV-02106, Superior Court of Iredell County). The Roberts Estate action was also filed in the Superior Court of Iredell County and names both the Hankook Defendants, the R. Morrison Estate, and General Motors. The Estate's decedent, Trent Roberts, was a passenger in the GM Tahoe with which the church bus collided after crossing the median of I-40 and was ejected from his vehicle despite wearing the seatbelt

15

responded to the Verified Complaint with its own Crossclaim against the Hankook Defendants. Plaintiffs further represent that, as a driver of the bus belonging to Front Street Baptist, Mr. Morrison was covered by the church's substantial insurance policy which "provides millions of dollars of insurance coverage to Mr. Morrison's Estate." (Doc. 17 / Exh. B – Declarations Page for Front Street Baptist, 12 n. 10). Significantly, Hankook's fraudulent joinder position is undermined by the fact that the Hankook Defendants, like Plaintiffs, assert that Mr. Morrison's negligence could be deemed a possible proximate cause, maybe the sole cause, of the wreck.

Finally, Defendant Hankook contends that there is a risk of local prejudice to the removing defendants if this lawsuit is litigated in the state court. Hankook points to the fact that all of the Plaintiffs are North Carolina residents (most are residents of the City of Statesville), that Front Street Baptist is located within the North Carolina General Court of Justice, Superior Court of Iredell County, and that the media coverage surrounding the accident was extensive. (Doc. 19, 5). However, Hankook's asserted statutory "right to removal" is not aided by the risk of local prejudice where original jurisdiction in the federal court does not exist. *See* 28 U.S.C. § 1441(a).

**IV.    Order**

**IT IS, THEREFORE, ORDERED** that Plaintiffs' Motion for Remand is hereby **GRANTED**.

---

restraint. (Roberts Estate Compl., ¶¶ 16, 21). The Roberts Estate, like Plaintiffs here, allege that Mr. Morrison *may* be shown to have been negligent in the operation or maintenance of the church bus which would render the Morrison Estate jointly and severally liable. (Roberts Estate Complaint, ¶¶ 87−92).

Signed: January 30, 2015

*Richard L. Voorhees*

Richard L. Voorhees
United States District Judge